UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT EUGENE WOODSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NURSE TARRY UNKNOWN, et al., ) <br> ) <br> Defendants. ) | Case No. 4:21CV314 HEA |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. No. 15] on the grounds that Plaintiff failed to properly exhaust available administrative remedies. Plaintiff has not filed an opposition to the instant motion. For the reasons set forth below, the Court will grant Defendants' Motion.

## Facts and Background

Plaintiff Robert Eugene Woodson is a self-represented litigant, who brings this 42 U.S.C. § 1983 lawsuit alleging that Defendants Terry Taylor, RN, and Holly Queen, LPN, were deliberately indifferent to his medical needs. Defendants, who are employed by Corizon Health, were sued in both their official and individual capacities, but the Court dismissed the official capacity claims against them in its Order dated August 2, 2021. Therefore, only the claims against Defendants in their individual capacities remain.

Plaintiff, a prisoner incarcerated by the Missouri Department of Corrections ("MDOC"), alleges that on January 12, 2021, his hands were "slammed and crushed" in a "chuckhole" by a correctional officer at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC").[1] In his Complaint, Plaintiff asserts this left him "in pain in both hands," with gashes on his "hand and wrist and [knots] and nerves sticking up." After receiving his injuries, Plaintiff asked for emergency medical attention and claims Defendant Taylor, whom he identified as a nurse named "Tarry," ignored his request for help, instructing him to "wash it off," then walked away from him.

The next day, on January 13, 2021, Plaintiff was transferred to the Farmington Correctional Center ("FCC"), where he again asked for emergency medical attention. Plaintiff was advised that he would be seen by Corizon medical staff, but was never seen by anyone before being placed in administrative segregation. That same day, he asked Defendant Queen, LPN, for medical attention, who told him "she would take care of it." However, Plaintiff alleges that Defendant Queen never helped him that day, and every time he saw her, she would give different excuses or "just ignore [him]."

---

[1] The use of force was the subject of a separate lawsuit, which was dismissed because Plaintiff failed to exhaust available administrative remedies at the time he filed it. *See* Doc. No. 42, *Woodson v. Case*, No. 4:21CV192-SRC (E.D. Mo. February 16, 2022). Defendant has filed a Notice of Appeal.

2

On January 28, 2021, Plaintiff was released from administrative segregation and wrote asking for medical care. He was seen by a nurse practitioner on February 18, 2021. Plaintiff was given an x-ray, which revealed that his thumb was broken in two places, two fractured fingers, and "intensive nerve damage due to lack of medical care." The nurse practitioner placed Plaintiff's hand and thumb into a splint. Plaintiff notes that he did not receive any medical treatment for over four weeks, even though he requested such treatment every day. As a result, Plaintiff is seeking $350,000 in damages.

Defendants move for summary judgment[2] on the grounds that Plaintiff failed to properly exhaust available administrative remedies. Defendants attached a declaration of a MDOC FCC Grievance Officer and a declaration of a ERDCC Grievance Officer, both who reviewed Plaintiff's grievance records at their respective facilities, the MDOC Grievance Policy, and MDOC's Grievance Summary and Records for Plaintiff to its Motion. Plaintiff did not file a response, so the facts as stated by Defendant are deemed admitted under Local Rule 4.01(E). *Deichmann v. Boeing Co.,* 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999).

---

[2] On June 23, 2022, Defendants filed a second Motion for Summary Judgment to maintain compliance with the deadline for filing dispositive motions in accordance with the Court's Case Management Order. Plaintiff has not filed an opposition to the second Motion. Defendants contend that Plaintiff's lawsuit should be dismissed for the reasons set out in the instant motion, which was still pending at that time. The Court agrees, and therefore will deny the second Motion for Summary Judgment [Doc. No. 21] as moot.

## Standard

Rule 56(c) provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of [his] pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). *Anderson,* 477 U.S. at 257; *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act, ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (finding if an inmate does not exhaust administrative remedies before filing suit in federal court, dismissal is mandatory).

Section 1997e(a)'s "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Courts in this district have consistently confirmed that the PLRA's exhaustion requirement applies to claims of deliberate indifference against entities like Corizon and their employees. *See Woodson v. Case*, No. 4:21CV192 SRC, 2022 WL 473887 (E.D. Mo. Feb. 16, 2022); *Watson v. Witty*, No. 2:16CV71 HEA, 2019 WL 118556 (E.D. Mo. Jan. 7, 2019); *Arnold v. Corizon, Inc.*, No. 1:15CV62 SNLJ, 2016 WL 520950 (E.D. Mo. Feb. 10, 2016); and *Nettles v. Lombardi*, No. 1:13CV146 JAR, 2015 WL 5098729 (E.D. Mo. Aug. 31, 2015).

5

A prison's grievance procedures govern the requirements of exhaustion under the PLRA. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). "An inmate satisfies § 1997e(a) by pursuing 'the prison grievance process to its final stage' to 'an adverse decision on the merits.'" *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (quoting *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014)). "Unjustified" delay in responding to the prisoner's grievance procedures or form requests when he does in fact file a grievance and receives a response does not excuse his failure to exhaust. *Porter*, 781 F.3d at 452. For an MDOC inmate, exhaustion requires filing of an Informal Resolution Request ("IRR"), Offender Grievance, and Offender Grievance Appeal. *Foulk v. Charrier*, 262 F.3d 687, 694 (8th Cir. 2001); see also, *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (holding the inmate has exhausted the grievance process upon receiving the grievance appeal response in Missouri prisons).

## Discussion

Under the policy of the MDOC, the administrative grievance process is initiated by filing an IRR within fifteen (15) calendar days of the alleged incident. If an inmate is dissatisfied with the response to an IRR, the inmate must file an Offender Grievance within seven (7) calendar days of receiving a response to the IRR. If an inmate is dissatisfied with the response to the Offender Grievance, the inmate may file a Grievance Appeal within seven (7) days of receiving the

response. A grievance is not considered exhausted unless and until the inmate completes the formal grievance procedure at the appeal level.

MDOC records reveal two grievances filed by Plaintiff at ERDCC between January 12, 2021, and March 4, 2021, which is the date Plaintiff signed his Complaint.[3] According to the FCC records, Plaintiff did not initiate any grievances at the FCC between these dates. In one of the grievances initiated on February 22, 2021, documented as ERDCC-21-00241, Plaintiff alleged that he was assaulted by a correctional officer and had not received medical care for his injury. A response was issued to Plaintiff on or about April 7, 2021. Plaintiff submitted an offender grievance appeal on April 28, 2021. The status of Plaintiff's appeal was not revealed to the Court. The second grievance Plaintiff filed was about lost property and is not relevant to this lawsuit.

Here, Plaintiff's grievance records establish that he failed to exhaust his claims against Defendants before filing suit as required. Plaintiff filed his initial grievance with ERRDC on February 22, 2021, and then filed this lawsuit shortly after in March 2021. *After* Plaintiff initiated this lawsuit, ERDCC's response was issued to Plaintiff on or about April 7, 2021, and then Plaintiff submitted an offender grievance appeal on April 28, 2021. Plaintiff did not complete the formal grievance procedure at the appeal level as required by the MDOC Grievance

---

[3] Plaintiff's Complaint was docketed on March 11, 2021.

Procedure prior to filing his Complaint in March 2021. Unexhausted claims cannot be brought in federal court. *Woodford,* 548 U.S. at 84-85.

## Conclusion

Because Plaintiff failed to exhaust his available administrative remedies at the time he filed this lawsuit, Defendants' Motion for Summary Judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 15] based on exhaustion is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Second Motion for Summary Judgment [Doc. No. 21] is **DENIED** as moot.

Dated this day 8th of August, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE